NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0519n.06
Filed: July 25, 2006

Case No. 05-3523

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff-Appellee** | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| **v.** | ) | **COURT FOR THE NORTHERN** |
| | ) | **DISTRICT OF OHIO** |
| **JAMAL PUSEY,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |

BEFORE:     KENNEDY and COLE, Circuit Judges; and VARLAN, District Judge[*]

    VARLAN, District Judge.   Defendant-appellant Jamal Pusey was convicted of

possession with the intent to distribute cocaine base, use or carrying a firearm during a drug

trafficking offense, and being a felon in possession of a firearm.  On appeal, Pusey argues

that the district court erred in failing to suppress evidence seized from Pusey's person and

residence pursuant to a search warrant on October 4, 2002, because the affidavit supporting

the search warrant was insufficient.  For the reasons that follow, we **AFFIRM** the judgment

of the district court.

---

[*]The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of
Tennessee, sitting by designation.

I.

In September 2002, officers of the Youngstown Police Department Vice Squad received information from an informant that Jamal Pusey was selling cocaine base (or "crack") from a house located at "720 Sherwood" in Youngstown, Ohio. Previously, this informant had provided information that police could verify by independent investigation, and which led to several narcotics arrests.

In response to the informant's allegations, officers began a drug investigation that focused on the residence at 720 Sherwood. As part of the investigation, officers began "random surveillance" of that residence, during which they observed "several subjects go to 720 Sherwood, stay a short period of time, and leave, such activity being common in illegal drug sales."

Around the same time, officers began receiving complaints from citizens in the area about illegal drug activity in and around the residence at 720 Sherwood.

During the week of September 23, 2002, in an effort to corroborate the informant's information about Pusey and the residence at 720 Sherwood, officers conducted a "controlled buy" of cocaine base. Officers met with the informant, searched him to make sure he did not have any hidden money or contraband, gave him money, and sent him into the residence. While the informant was conducting the drug transaction, officers continued to watch the residence, but did not conduct audio or video surveillance of the drug transaction. In no more than five minutes, the informant returned to the officers with cocaine base. Officers

searched him again and found that he no longer had the money and did not have any other contraband. The informant told officers he had purchased the cocaine base from Pusey.

During the week of September 30, 2002, officers repeated the controlled buy. Officers met with the informant, searched him, gave him money, and observed him enter the residence at 720 Sherwood. Shortly thereafter, the informant returned to the officers with cocaine base and stated that it had been purchased from Pusey. Just as with the first controlled buy, officers searched the informant after he gave them the cocaine base, and they found he had no other money or contraband.

During the searches before the controlled buys, officers checked the informant's pockets and mouth for money or contraband. This procedure was repeated upon the informant's return from the transactions. Based on these searches, officers found that the informant did not possess any money or contraband before the transactions and that the informant possessed no contraband or money after delivering the cocaine base to officers. At no time did the officers search the informant's body cavities.

On October 4, 2002, within 72 hours of completion of the second controlled buy, Youngstown Police Department Detective Sergeant Gerard Slattery[1] applied for a search warrant giving officers the authority to search the residence at 720 Sherwood and the person of Jamal Pusey. Detective Slattery also completed an affidavit in which he set forth the facts supporting probable cause to issue the search warrant.

---

[1]The suppression hearing transcript erroneously identifies Gerard Slattery as "Jerard Slattery."

In the affidavit, Detective Slattery disclosed that a reliable informant told officers that Jamal Pusey was selling cocaine base from the residence at 720 Sherwood. Based on that information, Detective Slattery explained that officers conducted surveillance, during which they observed people frequently coming and going from the residence in a manner that was consistent with illegal drug activity. Detective Slattery also noted that citizens in the neighborhood were complaining about drug activity originating at 720 Sherwood. He went on to describe the two controlled buys. Finally, Detective Slattery explained that the informant was reliable because he provided information in the past that had been independently verified and had resulted in arrests and seizures of narcotics.

Detective Slattery did not disclose the name or criminal history of the informant. He also did not disclose that officers had no video or audio surveillance of the controlled buys. Furthermore, Detective Slattery did not disclose that officers had not actually seen Pusey at the residence during the weeks of the controlled buys.

Detective Slattery presented the warrant application and affidavit to Youngstown Municipal Court Judge Elizabeth Kobly[2], who signed it on October 4, 2002.

After issuance of the search warrant, officers went to 720 Sherwood, where they observed Pusey standing in the doorway of the residence. The officers identified themselves and stated that they had a search warrant. Pusey closed the front door and "attempted to barricade" himself inside. Officers rammed the door, forcing it open, and observed Pusey

_____

[2] The suppression hearing transcript erroneously identifies Judge Kobly as Judge "Colby".

holding a bag of cocaine base while standing next to a firearm that was on a chair. Officers ordered Pusey to the ground, but he dropped the bag and attempted to run. A struggle ensued, after which Pusey was placed under arrest.

During the searches of the residence and Pusey, officers recovered money from Pusey's sock; the plastic bag containing cocaine base that Pusey had been holding; a pistol, ammunition and magazine from a living room chair; and other plastic bags containing cocaine base from a living room card table. As a result, the government charged Pusey in a superseding indictment with possession with the intent to distribute cocaine base, possession of a firearm during a drug trafficking offense, and possession of a firearm by a convicted felon.[3]

On January 28, 2005, Pusey moved for suppression of this evidence arguing that it was illegally obtained because the affidavit supporting the search warrant was insufficient. The government responded in opposition to the motion, and the district court conducted a suppression hearing. During the hearing, Detective Slattery testified, and the government and Pusey presented argument. At the conclusion of the hearing, the district court stated:

> I am going to deny the motion to suppress. I think there is more than probable cause. Even though that's not the standard, I think there is more than probable cause for the issuing magistrate to issue the search warrant, and there is no evidence to suggest that the executing officers believed there was a defect in the search warrant.

---

[3] The government also alleged a fourth count, which was possession with the intent to distribute cocaine base, but that count is based on a subsequent October 29, 2002 incident and is not a subject of this appeal.

Most important in this is just the simple facts here that we have at least two controlled purchases where an individual goes into the premises and comes out from the premises with drugs that person did not have earlier, and the issuing magistrate – well your argument made – it may be possible, but it is to a degree so far[-]fetched that the issuing magistrate could well decide that it didn't make sense.

So it suggests to me that there was probable cause, and there was more than a substantial basis for issuance of the warrant. We had two transactions that occurred in this location. The person was searched before they went in. They were searched when they came out, and the money had been left in the house.

The person had cocaine when they came out, so I think there was more than enough evidence for the magistrate, the municipal judge[,] to issue the search warrant. And to my understanding, the search warrant was issued both as to your client's person but also as to the premises. So I will deny the motion to suppress as to that.

Following the hearing, the district court issued a written order restating its denial of Pusey's motion to suppress, finding that "there was more than probable cause for issuance of the search warrant and that there was no evidence that the officers believed the warrant was defective."

On February 15, 2005, after the evidence seized from Pusey and the residence at 720 Sherwood was introduced at trial, a jury convicted Pusey of possession with the intent to distribute cocaine base, possession of a firearm during a drug trafficking offense, and possession of a firearm by a convicted felon. Pusey was sentenced on April 13, 2005, final judgment was entered on April 19, 2005, and this timely appeal followed.

II.

We review the denial of a motion to suppress for clear error with respect to the district court's findings of fact and *de novo* with respect to conclusions of law. *See United States v.*

6

*Lattner*, 385 F.3d 947, 952 (6th Cir. 2004) (citing *United States v. Miggins*, 302 F.3d 384, 397 (6th Cir. 2002); *United States v. Bradshaw*, 102 F.3d 204, 209 (6th Cir. 1996)).

An affidavit in support of a search warrant application is sufficient if it establishes probable cause to believe that evidence of narcotics trafficking would be present at the place to be searched at the time of the search. *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991). Probable cause means "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion," *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990), and it exists where "there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *Davidson*, 936 F.2d at 859 (quotation omitted). *See also Illinois v. Gates*, 462 U.S. 213, 238 (1983); *Lattner*, 385 F.3d at 951 (citations omitted). A "magistrate's determination of probable cause is afforded great deference," and it should be reversed only if it is "arbitrarily made." *Lattner*, 385 F.3d at 952 (quoting *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001)) (citing *United States v. Finch*, 998 F.2d 349, 352 (6th Cir. 1993)).

"An informant's tip is considered to have greater reliability, and therefore to be more supportive of a finding of probable cause, if the affidavit avers that the name of the confidential informant has been disclosed to the issuing judge." *United States v. May*, 399 F.3d 817, 823 (6th Cir. 2005) (citing *United States v. Helton*, 314 F.3d 812, 820 (6th Cir. 2003)). On the other hand, the failure to identify a confidential informant to the magistrate does not invalidate probable cause because it is "but one 'relevant consideration[] in the totality-of-the-circumstances analysis that traditionally has guided probable-cause

7

determinations . . . .'" *Id*. at 824 (quoting *Gates*, 462 U.S. at 233) (stating "a deficiency in one [element] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability"). Thus, where the magistrate had an affidavit that included an unidentified informant's tip, probable cause may be found "if the government established that the issuing judge had before him 'additional evidence [that] buttressed the informant's information.'" *Id*. at 824 (quoting *United States v. Williams*, 224 F.3d 530, 532-33 (6th Cir. 2000)). That additional evidence "need not be obtained from a source unrelated to the confidential informant–*e.g.*, an independent police investigation or a second confidential informant–but may be any set of facts that support the accuracy of the information supplied by the informant." *Id*. at 824 (citing *Jones v. United States*, 362 U.S. 257, 271-72 (1960)). In short, an affidavit is sufficient to support a finding of probable cause as long as the magistrate is "informed of some of the underlying circumstances . . . from which the officer concluded that the informant, whose identity need not be disclosed, was credible, or his information reliable." *Id*. at 824 (quoting *Aguilar v. Texas*, 378 U.S. 108, 114 (1964)).

In the case now before us, the totality of the circumstances support the issuing judge's finding that the search warrant was supported by probable cause as to both the residence and the defendant. The evidence before the issuing judge with respect to the residence was as follows: (i) the informant's tip; (ii) the officers' observations of people frequently coming and going to and from the residence in a manner commonly associated with drug activity; (iii) citizen complaints; and (iv) the informant's two controlled buys at the residence. The

8

evidence before the issuing judge with respect to the defendant was as follows: (i) the informant's tip; and (ii) the informant's two controlled buys from the defendant at the residence. With respect to the informant, the issuing judge was told that the informant had provided reliable information to officers in the past, which had been verified by officers and had led to narcotics arrests.

The defendant argues that the information provided to the issuing judge regarding the informant was insufficient because the informant's name and criminal history were not disclosed. As we made clear in *May*, the issuing judge need not have the informant's name as long as the judge had other information that tended to indicate the informant's information was reliable. *See* 399 F.3d at 824 (citing *Jones*, 362 U.S. at 271-72). The issuing judge was told that the informant had provided reliable, verifiable information, as well as information that resulted in narcotics arrests, in the past. Furthermore, the issuing judge was told of the officers' independent investigation, which tended to credit the informant's information. That information, along with the information regarding the controlled buys, police surveillance, and neighbors' complaints, tended to indicate that the informant's information was reliable, even though the issuing judge was not informed of the informant's name and criminal history.

The defendant also argues that the facts related to the controlled buys were insufficient because, although the informant's pockets and mouth were searched for money and drugs before and after the controlled buys, officers failed to search the informant's body cavities or record the buys. The defendant cites no authority for the proposition that those

9

steps must be taken for a controlled buy to form a basis for a finding of probable cause, nor does the defendant explain any specific need for such steps under the circumstances of this case. Although taking such additional steps and disclosing them to the issuing judge certainly would have buttressed the other information contained in the affidavit, the failure to do so was not fatal. "The affidavit is judged on the adequacy of what it does contain, not on what it lacks or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (en banc). It was sufficient for the officer to describe the sequence of events and explain that the informant had been searched both before and after the controlled buys without finding any unauthorized money or contraband.

Because we conclude that the affidavit was sufficient to support probable cause, we need not determine whether the *Leon* good faith exception to the exclusionary rule applies. *See United States v. Leon*, 468 U.S. 897, 922 (1984).

### III.

For the reasons discussed above, we **AFFIRM** the judgment of the district court.

10