RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0212p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

        *Plaintiff-Appellant,*

    *v.*

ROBERT LEE ARCHIBALD, JR., aka Chan;
LOLETHIA MUSE; and DUANTEZ CORNELL
JENKINS,

        *Defendants-Appellees.*

No. 11-5488

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:10-cr-64—Aleta Arthur Trauger, District Judge.

Argued: April 10, 2012

Decided and Filed: July 11, 2012

Before: BATCHELDER, Chief Judge; McKEAGUE, Circuit Judge; and QUIST[*],

District Judge.

_____

## COUNSEL

**ARGUED:** J. Alex Little, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellant. Michael E. Terry, TERRY & GORE, Nashville, Tennessee, for Appellees Archibald and Muse. **ON BRIEF:** J. Alex Little, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellant. Michael E. Terry, Stephanie H. Gore, TERRY & GORE, Nashville, Tennessee, Deanna Bell Johnson, Franklin, Tennessee, Joseph F. Edwards, Cookeville, Tennessee, for Appellees.

---

[*]The Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

————————————

**OPINION**

————————————

ALICE M. BATCHELDER, Chief Judge.  The government appeals the district court's order suppressing evidence found as a result of a state-issued search warrant. Because we find that the search warrant was valid and the officers executed it in accordance with the Constitution, we REVERSE the district court's suppression order.

**I.**

On May 20, 2008, Michael Wilson, an officer with the Nashville Police Department, arrested a woman for solicitation of prostitution.  The woman had worked as an informant for the Department in the past.  In an effort to avoid the solicitation charge, the woman accepted Officer Wilson's offer to cooperate as a confidential informant in a controlled buy of crack cocaine.  Later that evening, the informant purchased cocaine from 5A University Court, an apartment in Nashville, Tennessee.

On May 23, 2008, Officer Wilson presented an affidavit to a Tennessee state judge seeking a search warrant for Apartment 5A.  The affidavit stated that a controlled purchase of an undisclosed amount of narcotics had occurred at that location within the last 72 hours with the cooperation of a confidential informant and that the informant had been "used in the past for successful recovery of illegal narcotics as well as the successful prosecution of such offenses."  It explained that the officers prepared the informant for the controlled purchase by searching her for contraband, giving her prerecorded money, and wiring her for audio surveillance.  The affidavit further stated that the officers drove the informant to Apartment 5A and maintained physical surveillance of the premises while they monitored the audio wire on the informant.  The affidavit stated that the officers would disclose the identity of the informant to the judge signing the warrant, but it did not give any further information about the informant or the controlled purchase.  The state judge signed the search warrant at 11:10 a.m. the same day.

On May 28, 2008, five days after the state judge issued the warrant, officers executed the search at Apartment 5A. Defendants Archibald and Jenkins were in the premises when officers arrived. Officers discovered crack cocaine on Jenkins and a large amount of cash on Archibald. They also discovered a loaded pistol and a substantial piece of crack in the kitchen. A canine search of Archibald's car, which was in the driveway of the premises, revealed $12,000 cash.

The state of Tennessee indicted Defendants Archibald and Jenkins on state drug and weapons charges. The state eventually dismissed the indictment after the trial court suppressed the evidence, and the state appellate court affirmed.

On March 31, 2010, a federal grand jury indicted Defendants Archibald, Jenkins, and Defendant Muse, the leaseholder of Apartment 5A, on several charges including the use of a premises to manufacture controlled substances, possession with the intent to distribute cocaine near public housing, making false statements to federal agents, and possession of a firearm in furtherance of a drug-trafficking crime. Each defendant moved to suppress the evidence discovered from the May 23, 2008 search warrant. The district court granted the motion and suppressed the evidence, finding that the affidavit presented probable cause to search Apartment 5A, but the probable cause had gone stale by the time officers executed the warrant, eight days after the controlled buy. Also, without conducting a *Franks* analysis or hearing, the court concluded that the affidavit contained knowing or reckless falsities regarding the reliability of the informant.

The government has timely appealed the district court's suppression order.

## II.

Preliminarily, we must address Defendant Jenkins's request that we consider an argument he presented to the district court regarding the preclusive effect of the Tennessee state courts' decisions suppressing the evidence. Specifically, Jenkins argues that the Full Faith and Credit Act prevents the government from relitigating the constitutionality of the search warrant because the Tennessee courts found that the

warrant and search were unconstitutional. Jenkins presented this argument to the district court, which correctly rejected the claim because Jenkins had not established that a Tennessee court would give the previous courts' findings preclusive effect. *See United States v. Dominguez*, 359 F.3d 839, 841–42 (6th Cir. 2004) (addressing a similarly-postured criminal case based on a state-issued-and-suppressed search warrant); *see also Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 381–82 (1985). Jenkins presents this argument on appeal without filing a notice of cross-appeal. We have held that "the filing of a notice of cross-appeal is jurisdictional where an appellee wishes to attack part of a final judgment in order to enlarge his rights or to reduce those of his adversary," which is precisely what Jenkins attempts with this argument. *See Francis v. Clark Equip. Co.*, 993 F.2d 545, 552 (6th Cir. 1993). Accordingly, Jenkins's claim is not properly before us, and we dismiss his argument for lack of jurisdiction.[1]

Turning to the merits of the government's arguments, we recognize that the district court suppressed the evidence because it determined that the probable cause in the affidavit had gone stale by the time the officers executed the warrant, eight days after it was issued. However, staleness is a concept that is meant to apply to information used for the issuance of a search warrant, not its execution; therefore, the more appropriate inquiry is whether the warrant was valid when it was issued and, separately, whether the officers properly executed the warrant.

**A.**

We review *de novo* the legal question of whether a search warrant affidavit establishes probable cause to search, and we give "'great deference'" to the determination of the judge who issued the warrant. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (quoting *United States v. Allen*, 211 F.3d 970, 973

---

[1]We likewise reject the similar argument that appellees' counsel stressed at oral argument regarding the fairness of allowing the federal government to prosecute this case following the dismissal in state court. Under the dual sovereignty doctrine, the federal government and a state may separately prosecute a defendant for the same criminal conduct. *United States v. Mardis*, 600 F.3d 693, 696 (6th Cir. 2010). This doctrine squarely applies here, and the government is entirely within its rights to prosecute this case.

(6th Cir. 2000) (en banc)).  Generally, we view the evidence in a light most likely to support the decision of the district court, but "'when the district court itself is a reviewing court, this court owes the district court's conclusions no particular deference.'" *Id.* (internal alterations omitted) (quoting *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1996)).  Looking only to the four corners of the affidavit, *id.*, we will find probable cause to support a search warrant if the affidavit establishes "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  We will uphold a probable cause determination if the issuing judge had a "substantial basis for concluding that a search would uncover evidence of wrongdoing," *id.* at 236 (internal alterations and quotation marks omitted), and we will reverse only if the issuing judge's determinations were arbitrarily exercised.  *Weaver*, 99 F.3d at 1376.

The affidavit for Apartment 5A relies exclusively on the information of one confidential informant.  Judges faced with this type of affidavit must consider the veracity, reliability, and basis of knowledge of the informant's information, *Brooks*, 594 F.3d at 493; but even "'an affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information.'"  *United States v. Coffee*, 434 F.3d 887, 893 (6th Cir. 2006) (quoting *United States v. Woosley*, 361 F.3d 924, 927 (6th Cir. 2004)).  Moreover, "an 'explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [the informant's tip] to greater weight than might otherwise be the case.'" *Weaver*, 99 F.3d at 1377 (alteration in original) (quoting *United States v. Sonagere*, 30 F.3d 51, 53 (6th Cir. 1994)).

Here, the affidavit states that an informant made a controlled purchase of narcotics while under police surveillance, and it further describes the officers' arrangements for the controlled purchase.  This is sufficient corroborating information from which the issuing judge derived a substantial basis for concluding that drugs would be found at Apartment 5A.  *See Coffee*, 434 F.3d at 893–95 (finding probable cause in

an affidavit that lacked any information regarding the reliability of the informant but which described the informant's purchase of drugs from the location to be searched and officers' arrangements for the controlled purchase). Defendant Archibald argues that the informant and affidavit were unreliable because the affiant had never met the informant before May 20, 2008, and the affidavit failed to inform the issuing judge that the informant was working off a criminal charge. These facts, however, are immaterial to whether the affidavit, as written, was sufficient to give the issuing judge a substantial basis to find probable cause. *See id.* at 892 ("Review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit."); *see also Brooks*, 594 F.3d at 492 ("[I]nformation known to the officer but not to conveyed to the magistrate is irrelevant."). The affidavit states that the informant had been used in past investigations and prosecutions, and although the details regarding the informant were sparse, that information combined with the information regarding the officers' corroboration of the purchase, makes the affidavit sufficient to allow the issuing judge to conclude that the veracity and reliability of the informant supported probable cause.

Defendants also claim that the informant's single purchase of cocaine is insufficient to create probable cause at the purchase location. But we have previously found that a single controlled purchase is sufficient to establish probable cause to believe that drugs are present at the purchase location. *United States v. Jackson*, 470 F.3d 299, 307–08 (6th Cir. 2006); *United States v. Pinson*, 321 F.3d 558, 565 (6th Cir.), *cert. denied*, 540 U.S. 912 (2003). Specifically, the officers' corroboration of the controlled buy, the statement that the buy took place at that location within the last 72 hours, and the indication, though minimal, of the informant's reliability preclude the application of the contrary cases that Defendants cite. Giving great deference to the issuing judge's determination, *Brooks*, 594 F.3d at 492, the affidavit here was sufficient to support a finding of probable cause, even after only one controlled buy.

Nor did the probable cause in the affidavit go stale by the time the state judge issued the warrant, three days after the controlled purchase. In considering whether

probable cause exists when a judge issues a warrant, "the critical question is whether the information contained in the affidavit, when presented to the judge, established that there was a fair probability that evidence would still be found at the location of the search." *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006) (internal alterations and quotation marks omitted). Accordingly, "a warrant is stale if the probable cause, while sufficient at some point in the past, is now insufficient as to evidence at a specific location." *Id.* When analyzing staleness, we look to the specific facts of the case and consider several factors, including (1) the character of the crime, (2) the criminal, (3) the thing to be seized, and (4) the place to be searched. *Id.* at 572–73 (citing *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)). In determining whether information in an affidavit had gone stale by the time officers applied for a warrant, we apply the same analysis that we apply when reviewing the sufficiency of the affidavit. *See United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001).

In *United States v. Pinson*, this Court was presented with, for all relevant purposes, a search warrant that was identical to the search warrant in this case. *See Pinson*, 321 F.3d at 560–61 (quoting the affidavit in its entirety). Like Officer Wilson's affidavit, the *Pinson* affidavit described one controlled purchase by a confidential informant that occurred within 72 hours of the application for the warrant. *Id.* Rejecting the defendants' argument that the information was stale three days after the controlled buy, we held that "[i]t is reasonable that three days after the drug purchase that police would find narcotics, related paraphernalia, and/or the marked money in the residence." *Id.* at 565. Under this same reasoning, the probable cause established in the affidavit did not go stale by the time the state judge issued the warrant three days after the controlled purchase, and, therefore, the warrant was valid.

Because the warrant was valid when the state judge issued it, the district court's *sua sponte* analysis of the affidavit's veracity, done under the guise of the good-faith exception analysis, was improper. Instead, the district court should have conducted the analysis required by *Franks v. Delaware*, 438 U.S. 154 (1978), which mandates that a defendant first "provide a substantial preliminary showing that a false statement was

made either knowingly or intentionally, or with reckless disregard for the truth." *United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008). Only after the defendant makes this showing may the court consider the veracity of the statements in the affidavit or the potential effect of any omitted information. *Id.* Without this substantial showing, courts may not make a *Franks* ruling regarding the veracity of statements made in an affidavit. Here, the district court did not require such a showing because it reasoned that this Court's decision in *United States v. West*, 520 F.3d 604 (6th Cir. 2008), did not require a *Franks* analysis. The important aspect of *West* that the district court overlooked, however, is that the warrant in that case was invalid, which allowed the court to consider the veracity of the affidavit in the context of whether the good-faith exception could apply to save the warrant. *See West*, 520 F.3d at 610 ("[The] affidavit is 'bare bones,' and does not establish probable cause to believe that evidence of any crime was likely to be found . . . ."). We have never held that a district court may consider the veracity of an affidavit underlying a valid warrant without first requiring the defendant to make a substantial preliminary showing of falsity and then conducting the proper *Franks* analysis. The district court's *sua sponte Franks* ruling was, therefore, improper.

**B.**

We have recognized that the execution of a search warrant may be delayed within the time frame of the rules of procedure "where the cause or causes of the delay could appropriately be held to be 'reasonable.'" *United States v. Wilson*, 491 F.2d 724, 725 (6th Cir. 1974). Likewise, we have also found that probable cause still exists for the purposes of delayed execution of a search warrant when the warrant was executed within the time frame of the rules and where "there is nothing in the record to indicate that the circumstances related in the agent's affidavit affording probable cause for the issuance of the search warrant had changed before it was executed." *United States v. Lemmons*, 527 F.2d 662, 664 (6th Cir. 1975). Under Tennessee's Rules of Criminal Procedure, a "warrant must be executed within five days after its date." Tenn. R. Crim P. 41(e)(3). "[T]here is a rebuttable presumption [in Tennessee] that a warrant served within the

statutory five (5) day period retains the probable cause validity attributed to it by the issuing magistrate, subject to a proper evidentiary showing to the contrary." *Tennessee v. Evans*, 815 S.W.2d 503, 505–06 (Tenn. 1991). The parties concede that the officers executed the warrant five days after the judge issued it, within the time period of the Tennessee Rules.[2] We analyze the constitutionality of this delayed execution by determining first whether the cause of the delay was reasonable and next whether anything occurred during the period of delay that affected the presence of probable cause.

First, the record indicates that the five-day delay was reasonable. Officer Wilson testified that the officers waited for five days to execute the search warrant because the judge issued the warrant on the Friday of Memorial Day weekend, during which time the officers were off duty and the five-member team of officers had scheduling conflicts following the holiday weekend. We have found other delays reasonable where the delay was for the protection of an informant, *Wilson*, 491 F.2d at 725 (six-day delay), due to illness of the lead officer, *Lemmons*, 527 F.2d at 664 (five-day delay), and when the informant told officers that drugs would likely not be present over a weekend, *United States v. Harris*, 255 F.3d 288, 294 (6th Cir.), *cert. denied*, 534 U.S. 966 (2001) (four-day delay). *See also United States v. Goins*, 53 F. App'x 724, 728 (6th Cir. 2002) (affirming denial of suppression where three-day delay was "due to a lack of resources and a concern for indirectly disclosing the identity of the confidential informant"). Under the reasoning of these earlier cases, the five-day delay here, based on the holiday and scheduling conflicts of the officers, was reasonable. There is nothing in the record to suggest that the officers requested the warrant on the Friday of Memorial Day weekend so that they could purposely delay its execution for five days, and Defendants do not explain the strategic benefit of such a delay. Instead, the undisputed record indicates that the delay was simply the result of coincidence.

---

[2]The Federal Rules of Criminal Procedure at the time of the search required that warrants execute within ten days. Fed. R. Crim. P. 41(e)(2)(A)(I) (2008). We need not consider the applicability of the Federal Rules to this case because the warrant was executed within the narrower time frame of the Tennessee Rules.

Second, there were no changed circumstances between the issuance of the warrant and its execution that affected the presence of probable cause. Although we have stated that "[t]he law is clear" that there must be probable cause at the time the judge issues the warrant and at the time officers execute it, *United States v. Bowling*, 900 F.2d 926, 932 (6th Cir. 1990), we have never held that the mere passage of time within the parameters of the rules of procedure causes the dissipation of probable cause. Instead, we have looked for whether anything occurred during the delay that may have affected the continued presence of probable cause. *See id.* (considering the circumstances following the officers' discovery that an intervening consensual search of the premises did not reveal any evidence of a crime); *see also Lemmons*, 527 F.2d at 664. Defendants have not alleged that any intervening circumstances, other than the passage of time, affected the presence of probable cause. Because the delay was reasonable and nothing occurred between the issuance and execution of the search warrant that affected the presence of probable cause, the officers complied with the Constitution when they executed the search warrant within the parameters of the Tennessee Rules. Therefore, the evidence is admissible, and the district court erred when it granted Defendants' suppression motion.

### III.

For the foregoing reasons, we **REVERSE** the decision of the district court and **REMAND** for further proceedings consistent with this opinion.