NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0522n.06

Case No. 13-3844

FILED
Jul 16, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| ISAAC GREEN, JR., | ) | OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| _____ | ) | |

**Before: SILER, GILMAN, and GIBBONS, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** Isaac Green, Jr. was convicted by a jury on firearms and counterfeiting charges. He received concurrent sentences of 120 months of imprisonment on the firearms-related charges and 162 months of imprisonment on the counterfeiting charges. All of the tangible evidence against him was obtained by the police as a result of a search warrant executed at his residence in June 2012. Green sought to suppress the evidence on the basis of the allegedly defective search-warrant affidavit, which he claims was founded on intentionally made false statements.

The sole ground for Green's appeal is the failure of the district court to grant him an evidentiary hearing on his false-statements claim under *Franks v. Delaware*, 438 U.S. 154 (1978). For the reasons set forth below, we **AFFIRM** the judgment of the district court.

Case No. 13-3844
*United States v. Isaac Green, Jr.*

## I. BACKGROUND

### A. Factual background

In June 2012, Officer Art Carter of the Youngstown Police Department swore out an affidavit to search a single-family residence on Upland Avenue in Youngstown, Ohio. Officer Carter's affidavit described the alleged criminal activity as follows:

1. During the month of December 2011, officers of the Youngstown Police Department Vice Squad Unit, were approached by a reliable informant, who advised officers that a subject, unknown to the informant, was selling Crack Cocaine from 130 Upland. The Source further advised officers that the informant could purchase Crack Cocaine from said residence.

2. Based on the above, officers initiated an investigation and conducted random surveillance at 130 Upland. During the surveillance, officers observed numerous subjects go to 130 Upland, stay a short period of time and leave, such activity being common in the illegal sales of narcotics.

3. Also, during the month of December 2011, officers began receiving complaints from concerned citizens who live in the area about illegal sales of narcotics from the residence at 130 Upland.

4. During the week of December 12, 2011, Officer[s] Bigowsky [and] Aeppli met with a reliable informant [who] made a purchase of Crack Cocaine from John Doe at 130 Upland, under the controlled conditions to wit; officers met with and searched the informant with negative results. Officers then kept the informant under constant observation to and from the location. Upon returning, the informant turned over to officers suspected Crack Cocaine. The informant was searched a second time with negative results.

5. During the week of June 18, 2012, Officer[s] Carter [and] Voitus met with a reliable informant [who] made a purchase of Crack Cocaine from John Doe at 130 Upland, under the same controlled conditions described in the previous paragraph. Upon returning, the informant turned over to officers suspected Crack Cocaine. The informant was searched a second time with negative results.

6. During the week of June 18, 2012, Officer[s] Voitus [and] Carter met with a reliable informant [who] made a purchase of Crack Cocaine from John Doe at

130 Upland, under the same controlled conditions described in the previous paragraph. Upon returning, the informant turned over to officer[s] suspected Crack Cocaine. The informant was searched a second time with negative results.

7.	All three purchases of crack cocaine made during the weeks of December 12, 2011, and June 18, 2012, were made from a subject, known to informant as, John Doe, described as M/B, 50's, 5FT8IN, 150, Blk and Bro.

8.	The exact dates of the Crack Cocaine purchases cannot be listed as it may reveal the identity of the informant.

9.	The Crack Cocaine from December 12, 2011 and June 18, 2012 was field tested with positive results.

10.	The informant has been to 130 Upland in the past 72 hours and observed Crack Cocaine on the premises.

11.	The informant has been proven reliable in the past by supplying officers with information leading to the arrest of several subjects for narcotic violations and by supplying officers with information that officers were able to verify by their own independent investigation.

12.	Officers are requesting a nighttime Search Warrant because:

   A.  Cover of darkness will afford the officers greater protection and safety and allow officers to approach undetected so that items to be seized will not be destroyed.
   B.  Subject named in Warrant is more likely to be present.
   C.  Much [of the] activity described occurred during the night season.

13.	Officers are requesting that the Court authorize the search for all persons on the premises because:

   A.  The insidious nature of the contraband is such that those involved will act in secret and to the exclusion of innocent persons and possible informants. Thus, Affiant believes that no innocent persons will be present at the time of the search.
   B.  Since Affiant has requested a nighttime Search Warrant, the probability that innocent persons will be present during the search is minimal.

A municipal judge reviewed and signed Officer Carter's search-warrant application on June 21, 2012. Later that evening, officers searched Green's home and found Green sitting on a couch in the living room. During the search of Green's house and detached garage, the officers discovered, among other things, loose crack cocaine, cocaine residue, digital scales, cash, multiple computers, a computer printer, counterfeit money, and various firearms.

## B.     Procedural background

Green moved to suppress the evidence found during the search, arguing that Officer Carter's search-warrant affidavit was "bare bones" and thus did not establish probable cause. One month later, Green filed a supplemental motion asserting that (1) the search-warrant affidavit did not establish probable cause to search his detached garage, (2) Officer Carter intentionally made false statements in his affidavit, and (3) Green was entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). The district court denied Green's motions.

## II.  ANALYSIS

### A.     Standard for a *Franks* hearing

A defendant is entitled to a *Franks* hearing if he (1) "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and (2) "the allegedly false statement is necessary to the finding of probable cause." *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001) (internal quotation marks omitted). We have previously explained that "[a] defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).

The first prong of the *Franks* analysis (whether the defendant has made a substantial preliminary showing of intentional or reckless falsity) is a factual question that we evaluate

under the clear-error standard. *See United States v. Poulsen*, 655 F.3d 492, 504 (6th Cir. 2011) ("The determination as to whether a statement made in an affidavit is made with reckless disregard of the truth is a fact question.") (internal quotation marks omitted); *see also Graham*, 275 F.3d at 505 ("[T]he district court's factual findings are reviewed for clear error."). If a defendant makes this substantial preliminary showing, we turn to the second prong of the *Franks* analysis by removing the allegedly false statement and asking whether the search-warrant affidavit still supports a finding of probable cause. *Graham*, 275 F.3d at 505.

The second prong of the *Franks* analysis (whether an allegedly false statement is necessary to a finding of probable cause) is a legal question that we review de novo. *Id.* (explaining that "conclusions of law are reviewed de novo"). Probable cause exists if the remaining portions of the affidavit provide the court "with a basis for finding that there was a fair probability that contraband or evidence of a crime would be found." *Id.* at 504.

**B.     Green's arguments**

As a threshold matter, Green argues that Officer Carter deliberately falsified the entirety of the substantive portions of the search-warrant affidavit because it is nearly identical to the affidavit at issue in *United States v. Pusey*, 189 F. App'x 475 (6th Cir. 2006) (rejecting a *Franks* challenge arising out of another search in Youngstown, Ohio). But this court has previously determined that similar "boilerplate" arguments are without merit because the fact that a search-warrant affidavit is an almost "word-for-word" copy of the affidavit in a prior case is irrelevant "[a]s long as there is sufficient information to provide probable cause for the search." *See United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996) (internal quotation marks omitted); *see also United States v. Moore*, 661 F.3d 309, 312 (6th Cir. 2011) (upholding a largely

boilerplate search-warrant affidavit where an unnamed confidential informant had witnessed the defendant engaging in drug transactions).

In other words, the fact that officers recycle boilerplate language—a phenomenon that Green refers to as "uncanny coincidences between . . . affidavits"—does not necessarily mean that those officers knowingly, intentionally, or recklessly included false statements. *See Weaver*, 99 F.3d at 1381 (explaining that "[t]he Fourth Amendment does not require an officer to reinvent the wheel with each search warrant application"). We therefore cannot accept Green's conclusory argument that Officer Carter falsified the entirety of the search-warrant affidavit simply because it appears to have been adapted from a prior affidavit. *See Bennett*, 905 F.2d at 934 (explaining that, to make a substantial preliminary showing of intentional or reckless falsity under *Franks*, a defendant's "allegations must be more than conclusory").

Instead, this court's well-settled framework for *Franks* hearings requires a defendant to "point to *specific* false statements" and then "accompany his allegations with an offer of proof." *United States v. Cummins*, 912 F.2d 98, 101, 103 (6th Cir. 1990) (emphasis added) (independently evaluating the defendant's offer of proof in support of his *Franks* claim and concluding that he "has failed to meet his burden of proof in establishing deliberate falsehood or reckless disregard for the truth"). If a defendant carries his burden of proof, then those individual allegations—not the entire affidavit—are set aside and we review what remains to decide the issue of probable cause. *See Graham*, 275 F.3d at 505 (explaining that if a defendant makes a substantial preliminary showing of intentional or reckless falsity tied to individual allegations, then we evaluate "the affidavit's remaining content" rather than gaze skeptically at the entirety of the affidavit).

We now turn to Green's specific challenges to the search-warrant affidavit, which pertain to (1) Green's appearance; (2) the sum allegedly paid by the informant for varying amounts of drugs; (3) Officer Carter's employment history; (4) the lack of complaints from two of Green's neighbors about drug activity at Green's residence; and (5) field reports stating that the drugs obtained during the controlled purchases tested positive for heroin, not cocaine. Tellingly, however, none of these allegations directly challenge the affidavit's allegations that the three controlled purchases in fact occurred. Thus, even if we assume *arguendo* that Green has made a substantial preliminary showing that several statements tangentially related to the controlled purchases were intentionally or recklessly falsified, his argument would still fail because even "a single controlled purchase is sufficient to establish probable cause to believe that drugs are present at the purchase location." *United States v. Archibald*, 685 F.3d 553, 558 (6th Cir. 2012); *see also United States v. Jackson*, 470 F.3d 299, 308 (6th Cir. 2006) (holding that there was probable cause for the issuance of a search warrant where the officer's "corroboration of events that occurred during the controlled buy, as set forth in the affidavit, provide sufficient probable cause").

Nor did Green actually make a substantial preliminary showing of intentional or reckless falsity. His first allegation regarding the inconsistencies between the suspect's description in the search-warrant affidavit and Green's description in the presentence report does not establish that the affidavit was intentionally or recklessly falsified. A litany of reasons might justify these differences, ranging from the informant's honest though flawed recollection of the suspect's physical attributes, to the faulty transmission of this information to the police, to the passage of time. For these reasons, the 2013 presentence report, with its greater variance from the search-warrant affidavit and the police reports, does not show that the controlled purchases never

occurred. The district court therefore did not clearly err in finding that "the informant's descriptions are not so significant that . . . Officer Carter's statement was false."

Green has forfeited his next challenge pertaining to the amount of money that the informant paid during the controlled purchases by raising the issue for the first time on appeal. *See United States v. Lopez-Medina*, 461 F.3d 724, 738–39 (6th Cir. 2006) ("[W]hen a party has brought a pretrial suppression motion, . . . *any new suppression arguments* raised for the first time on appeal that were not contained in the original suppression motion will be deemed waived under Rule 12(e)" of the Federal Rules of Criminal Procedure) (emphasis added). We arrive at this conclusion given Green's concession in his reply brief that "it is true that defense counsel did not make these specific arguments in the suppression hearing."

Nor did the district court clearly err in concluding that Green failed to make a substantial preliminary showing that Officer Carter intentionally or recklessly falsified his law-enforcement experience. Although Officer Carter's statements differ slightly between the search-warrant affidavit and his trial testimony, Green has offered no evidence showing that Officer Carter intentionally or recklessly falsified those portions of the affidavit. Moreover, Officer Carter's statements could simply be the result of negligence or mistake, neither of which entitles a defendant to a *Franks* hearing. *See Cummins*, 912 F.2d at 102 (internal quotation marks omitted).

Green next argues that two of Green's neighbors testified that they had never observed drug trafficking (or other illegal behavior) at Green's residence. But as the district court correctly noted, the neighbors' testimony "does not by itself mean that other citizens did not see such activity or that Officer Carter himself did not observe such activity." Moreover, even if the allegation pertaining to neighbor complaints is removed, the affidavit would still contain

allegations pertaining to the three controlled drug purchases, the existence of which are sufficient in themselves to support a finding of probable cause. *See Archibald*, 685 F.3d at 558.

We further note that Green's reliance on *United States v. Black*, No. 98-5155, 1999 WL 357759 (6th Cir. May 19, 1999), with regard to the "neighbors" issue is misplaced. The court in *Black* remanded the case for a *Franks* hearing because a neighbor's testimony that he had never smelled marijuana on the premises called into question the likelihood that an officer smelled marijuana prior to exiting his police vehicle. *Id.* at *3 (explaining that the neighbor had been on Black's property "numerous times and never smelled marijuana" and was thus "in a better position to smell the marijuana than officers sitting inside a [police] vehicle") By contrast, the testimony of two of Green's neighbors is insufficient to call into question the likelihood that drug trafficking occurred on the premises, particularly considering that both neighbors admitted that they were away from their homes for significant periods of time.

Finally, Green disputes that the cocaine purchased by the informant was field-tested "with positive results" because Officer Carter's June 19, 2012 narcotics report shows a positive result for heroin, not crack cocaine. But Green's citation to the record is incomplete. Officer Carter twice testified that the substance obtained during the controlled purchases was crack cocaine. He attributed the heroin misclassification to human error, which is insufficient to make a substantial preliminary showing that Officer Carter intentionally or recklessly falsified his affidavit. *See Cummins*, 912 F.2d at 102.

### III.    CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.