RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0128p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

                                 *Plaintiff-Appellee*,

      *v.*

RAFAEL MOORE,

                                 *Defendant-Appellant*.

No. 20-4029

_____

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:20-cr-00004-1—John R. Adams, District Judge.

Decided and Filed:  June 7, 2021

Before:  GRIFFIN, WHITE, and READLER, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:**  Gregory Scott Robey, ROBEY & ROBEY, Cleveland, Ohio, for Appellant. Robert J. Kolansky, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

CHAD A. READLER, Circuit Judge.  After officers discovered drugs and firearms in his home, Rafael Moore pleaded guilty to violating various federal laws.  Moore's plea agreement allowed him to challenge on appeal aspects of his prosecution, including that the warrant supporting the search of his home lacked probable cause.  He did just that.  As none of Moore's arguments have merit, however, we affirm the district court's judgment.

**BACKGROUND**

On December 13, 2019, officer Daniel Dickens submitted an affidavit to a state court, seeking a search warrant for 10318 Dove Avenue, a single-family residence in Cleveland. Dickens averred that in "early December of 2019" a confidential informant disclosed to him that a drug dealer named "Pig" was selling cocaine out of the Dove residence. The informant revealed to Dickens that Pig's real name was Rafael Moore. He described Moore's race, height, weight, age, and date of birth. And he disclosed that Moore was an extremely cautious dealer—he deployed an extensive electronic surveillance system around his home and allowed only a few dealers to enter, spreading their arrivals out to avoid the appearance of heavy traffic. In addition to the details provided by the informant, Dickens disclosed that Moore had been charged with a number of past drug crimes, including one prior conviction for drug trafficking.

Dickens also described a controlled drug buy involving the informant and Moore that occurred in "early December 2019" at the Dove residence. Before the buy, officers provided the informant with prerecorded buy money. Officers also confirmed that the informant and his automobile were free of drugs, other money, and contraband. While under surveillance, the informant drove to the Dove residence. Moore allowed him to enter. A short time later, the informant reappeared at the front door. He then returned to his vehicle, at which point he was placed under "constant surveillance" by law enforcement until he met Dickens and another officer at a predetermined location. The informant then turned over what Dickens suspected to be cocaine.

This background information coupled with his experience and training led Dickens to aver, in support of his request for a search warrant, that he had probable cause to believe that drug sales were occurring at the Dove residence, and that evidence related to drug trafficking would be found there. The state court agreed and issued the search warrant that same day. When officers arrived at the Dove residence, they detained Moore and began their search. Officers unearthed two firearms, two kilograms of cocaine, 100 grams of cocaine base, and numerous materials used to facilitate large-scale drug trafficking. Later on, an officer with the federal Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) arrived at the Dove residence, advised Moore of his *Miranda* rights, and then interviewed him.

Moore was indicted on five federal counts:  one federal drug conspiracy count under 21 U.S.C. § 846; two counts for possessing and intending to distribute cocaine and cocaine base in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B); one count for possessing firearms while a felon in violation of 18 U.S.C. § 922(g); and one count for possessing firearms to further a drug trafficking crime in violation of 18 U.S.C. § 924(c).  Before the district court, Moore twice moved to suppress the evidence found at the Dove residence, primarily arguing that the affidavit that gave rise to the search warrant lacked indicia that the confidential informant was reliable.  Without holding an evidentiary hearing, the district court denied the motions.  Reserving his right to appeal that ruling, Moore agreed to plead guilty to each count in the indictment, save the conspiracy charge, which the government agreed to dismiss.  The district court sentenced Moore to a term of 66 months for the drug and felon-in-possession violations, followed by a term 60 months for the § 924(c) violation.  Moore's timely appeal followed.

**ANALYSIS**

1. Moore's primary argument on appeal is that the warrant authorizing the search of his residence was defective, meaning that the ensuing search violated the Fourth Amendment.  That the Fourth Amendment requires a search warrant to be supported by probable cause is not in dispute.  *See* U.S. CONST. amend. IV ("[N]o Warrants shall issue, but upon probable cause . . . .").  Whether probable cause supporting a search warrant existed at the time it was issued, however, is frequently disputed by those subject to a search.  Concisely described, probable cause exists when an affidavit shows a "fair probability" that criminal evidence will be found in the place to be searched.  *See United States v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018) (quoting *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009)).  With great deference toward the issuing judge's determination, federal courts examine the affidavit's four corners to determine whether, under the totality of the circumstances, the low bar of probable cause has been overcome.  *See United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) ("Probable cause 'is not a high bar.'" (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014))).  And we review the district court's legal conclusions on this front de novo.  *See United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc).

Officers rely on confidential informants with some frequency to procure information to support a request for a search warrant. *See United States v. Crawford*, 943 F.3d 297, 302 (6th Cir. 2019). Oftentimes, the informant's hearsay statements are used to support the request. If so, probable cause demands some additional evidence to validate the "informant's reliability." *See id.* at 306. There are various "means" for doing so. *Id.* For example, an affidavit that both details an informant's tip and describes a controlled drug purchase with the informant provides "sufficient corroborating information" to uphold a finding of probable cause. *See United States v. Archibald*, 685 F.3d 553, 557 (6th Cir. 2012).

That was the case in *United States v. Abdalla*, where the warrant affidavit described a confidential informant's tip that the defendant was engaged in narcotics trafficking from his home. 972 F.3d 838, 842 (6th Cir. 2020). The affidavit supplemented that information by detailing prearranged controlled drug buys from Abdalla's residence for which officers continually monitored the informant. *Id.* at 842, 849. By supplementing the informant's tip with a description of "an informant's [surveilled] controlled purchase," as well as "the officers' arrangements for the controlled purchase," the affidavit at issue in *Abdalla* was unlike those supported merely by a "sparse" anonymous tip or a "conclusory" statement about the informant's credibility. *Id.* at 849 (quoting *Archibald*, 685 F.3d at 557). And *Abdalla*, it bears adding, is not alone in holding that a confidential informant's credibility can be corroborated with a controlled buy. *See, e.g.*, *United States v. Crumpton*, 824 F.3d 593, 616 (6th Cir. 2016); *United States v. Ray*, 803 F.3d 244, 277 (6th Cir. 2015); *Archibald*, 685 F.3d at 557; *United States v. Jackson*, 470 F.3d 299, 307 (6th Cir. 2006); *United States v. Coffee*, 434 F.3d 887, 894 (6th Cir. 2006); *United States v. Pinson*, 321 F.3d 558, 563 (6th Cir. 2003). Indeed, even a single controlled purchase can be sufficient to establish probable cause to believe that evidence of drug trafficking is present at the purchase location. *See Archibald*, 685 F.3d at 558.

Measured by these standards, Dickens's affidavit satisfied probable cause. The affidavit began by noting a host of details about both Moore and his operations at the Dove residence, such as the many steps he took to avoid arousing suspicions from neighbors or law enforcement. The affidavit also revealed that Moore had a history of drug trafficking. *See United States v. Martin*, 526 F.3d 926, 937 (6th Cir. 2008) (concluding that the defendant's criminal drug history

provided other indicia of reliability for the informant's tip). And, most critically, the affidavit detailed a controlled drug buy at the Dove residence between the informant and Moore. To that end, the affidavit carefully described the steps taken by officers to ensure the buy occurred, such as searches of the informant before and after entering the home and the use of prerecorded money. *See Abdalla*, 972 F.3d at 849–50 (holding that an affidavit describing a controlled buy coupled with the officers' arrangements for the purchase provided sufficient corroboration). Collectively, this information demonstrated a fair probability that evidence of drug trafficking would be found at Dove.

Moore resists this conclusion on a number of fronts. For instance, he criticizes the affidavit for failing to attest expressly to the informant's reliability. Perhaps so. But a warrant affidavit need not include such attestations if it sufficiently details a controlled buy that supports the informant's credibility. *See Jackson*, 470 F.3d at 307. Moore also argues that the informant's tip was insufficiently detailed. Yet even then, a search is permissible based on an informant's bare assertions if law enforcement can independently corroborate the informant's credibility. *See United States v. Keeling*, 783 F. App'x 517, 522 (6th Cir. 2019) (observing that even "vague and conclusory statements" from an informant can aid a finding of probable cause if the informant's credibility is sufficiently corroborated).

Moore also argues that there was an insufficient nexus between the place searched and the suspected criminality. He invokes *United States v. Helton*, 314 F.3d 812 (6th Cir. 2003), where we held that a warrant affidavit that relied on an uncorroborated anonymous tip lacked probable cause to show that evidence of criminal activity existed at the place to be searched. *Id.* at 823. But unlike in *Helton*, the affidavit here relied on an informant whose reliability was corroborated by a controlled buy occurring in the place to be searched, thereby providing a sufficient nexus between the place and the suspected activity. *Cf. United States v. Reed*, 993 F.3d 441, 447 (6th Cir. 2021) (observing that a "common 'nexus' problem" occurs when a "person has committed a crime . . . *away* from the person's home") (emphasis added). After all, it is not much of a leap to infer that a suspect who has sold drugs from his home in the days preceding the issuance of a warrant will have evidence of that sale in his home. *See United States v. McCoy*, 905 F.3d 409, 417 (6th Cir. 2018).

Moore's remaining arguments are likewise unavailing. True, other items could also have been included in the affidavit, such as the specific date for the controlled buy and the amount the informant spent on the cocaine. But we judge a warrant affidavit "on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000). And in any event, the information that was provided about the buy was sufficiently detailed to suggest there was a "fair probability" that evidence of drug trafficking would be found at the Dove residence. *See Ray*, 803 F.3d at 277 (while acknowledging that "corroboration would [have been] stronger" with additional facts, the details that were provided were sufficient to support a probable cause finding). Moore also contends that the information relied on in the affidavit was stale, as the controlled buy occurred in "early December" and the warrant was not approved until December 13. Yet even if the controlled buy occurred as early as December 1, not enough time passed between that event and the submission of the affidavit for the information to have gone stale. *See, e.g.*, *United States v. Tisdale*, 980 F.3d 1089, 1094 (6th Cir. 2020) (holding an affidavit relying on observed trafficking-related activity at a home two-and-a-half weeks prior did not raise staleness issues).

All things considered, the underlying search warrant was supported by probable cause (meaning we need not examine whether the officers acted in good faith in relying on the search warrant). *See United States v. Thomas*, 605 F.3d 300, 311 (6th Cir. 2010).

2. As a corollary to his staleness argument, Moore argues that the search warrant for the Dove residence expired by the time of the search. Moore's timeliness argument, however, has its own timeliness problem: he failed to present the argument previously to the district court, meaning Moore likely forfeited his ability to press the argument now. *See United States v. Kennedy*, 714 F.3d 951, 959 (6th Cir. 2013). In any event, his argument lacks merit. The warrant was issued on Friday, December 13, and the search was executed on Wednesday, December 18. As state search warrants are "creatures of state law," Ohio law controls. *United States v. Castro*, 881 F.3d 961, 968 (6th Cir. 2018). And as Ohio law allows the warrant to be executed within three days of issuance, a timeframe that excludes the date of issuance and any weekends, the search of the Dove residence occurred within the timeframe provided under Ohio law. *See* Ohio R. Crim. P. 41(C)(2); Ohio R. Crim. P. 45(A). That an ATF officer participated

in the matter makes no difference here, as the officer became involved after the search occurred. *See United States v. Bennett*, 170 F.3d 632, 635–36 (6th Cir. 1999) (holding that when federal officers have not participated in obtaining the search warrant or in the search itself, the Federal Rules of Criminal Procedure do not apply).

3. Finally, Moore faults the district court for declining to hold an evidentiary hearing before denying his suppression motions, a decision we review for an abuse of discretion. *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019). To justify a request for a search-warrant-related evidentiary hearing, however, a defendant must set forth "sufficiently definite, specific, detailed, and non-conjectural" reasons for why contested factual issues cast doubt on a search's validity. *See United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006) (citations omitted). Moore did no such thing. His first suppression motion did not contest the facts in Dickens's affidavit; instead, Moore said that they were insufficient to demonstrate probable cause. His second motion similarly argued that the affidavit contained "insufficient" information to support a probable cause finding, with the addition of staleness and good faith arguments. In other words, Moore's suppression motions raised purely legal questions about the sufficiency of Dickens's affidavit. There was thus no reason to have an evidentiary hearing. *See Ickes*, 922 F.3d at 710.

## CONCLUSION

For the aforementioned reasons, we affirm the judgment of the district court.