NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0137n.06

No. 21-1093

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Mar 31, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| JEREMIE SCOTT ENNIS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: CLAY, GRIFFIN, and STRANCH, Circuit Judges.

GRIFFIN, Circuit Judge.

With the authorization of a search warrant, police "pinged" defendant Jeremie Ennis's cell phone twice to determine his location, ostensibly to execute two outstanding arrest warrants. Following the pings, officers promptly located Ennis and arrested him, and in the process, discovered in his possession a handgun, ammunition, and methamphetamine. Ennis sought to suppress this evidence, but the district court denied the motion. Thereafter, Ennis pled guilty while reserving his right to appeal the adverse motion-to-suppress decision. He does so now and also appeals his sentence. We affirm.

I.

On February 4, 2020, Kalamazoo Department of Public Safety Officer Stephen Seiser requested a search warrant from a Michigan state court magistrate judge, seeking cellular site

location information (CSLI) for a cell phone belonging to defendant. Officer Seiser sought "[c]urrent GPS and/or cell tower coordinates of [Ennis's] cell phone until 03-18-2020."[1]

In support of the warrant application, Officer Seiser submitted a one-page affidavit, in which he stated that the Kalamazoo Police had "received information" that Ennis was distributing methamphetamine in the Kalamazoo area, and that he was "known to possess and traffic illegal firearms in the Kalamazoo area." The affidavit also listed Ennis's two outstanding arrest warrants: One for a traffic violation and a second for failing to appear in Kalamazoo County court. Further, Officer Seiser swore in his affidavit that he had contacted a confidential informant who had spoken to Ennis on the phone and confirmed that the target phone number was Ennis's within the past week. According to the affidavit, the confidential informant also identified Ennis's girlfriend, who was apparently incarcerated at the Kalamazoo County Jail. Further, Officer Seiser had searched the jail's phone records and discovered that the girlfriend had called the target phone number recently. Finally, Officer Seiser averred that this confidential informant had provided him with information "on multiple occasions that has been determined to be credible and reliable [and] [f]urthermore, the informant has never proven to [be] untrustworthy." Based on these representations, Officer Seiser sought a CSLI search warrant for Ennis's phone "in order for him to be arrested on his warrants and aid in ongoing weapons law investigations."

The magistrate judge issued the search warrant the same day, and Officer Seiser began "pinging" Ennis's phone that afternoon. The first "ping" showed that the phone was on the 700 block of Hibbard Avenue in Kalamazoo, Michigan. Officer Seiser knew that 733 Hibbard was the

---

[1]The search warrant also requested historical CSLI from December 18, 2019 "through present," but it is not clear that historical CSLI was ever produced. The government never sought to introduce historical CSLI and the parties do not bring any arguments about historical CSLI, so we do not address this issue.

location of a recent shooting. A second "ping" indicated that Ennis's phone was on the 700 block of Hazard Avenue, also in Kalamazoo. Officer Seiser knew that the home at 715 Hazard "is a residence that is known to be frequented by individuals involved in methamphetamine." Undercover Kalamazoo Police Officers responded to 715 Hazard and observed a white Impala matching the description of Ennis's vehicle in the driveway. The officers followed the vehicle and observed it make a "very short stop/contact" on a residential street before pulling into the parking lot of a party store, which they understood to be "consistent with a street sale drug deal." The officers pulled into the parking lot, and Ennis's parole officer confirmed that Ennis was driving the vehicle. After a "physical scuffle" and an attempt to flee, Ennis was arrested. Officers searched his person and his vehicle, seizing a handgun, ammunition, and 66.7 grams of methamphetamine.

Ennis moved to suppress the evidence obtained during his arrest, arguing that it was the fruit of a search warrant that lacked probable cause. Without a hearing, the district court denied the motion. Following that decision, Ennis pled guilty to possession with intent to distribute methamphetamine and carrying a firearm during a drug-trafficking crime with the benefit of a plea agreement, which reserved his right to appeal the district court's ruling on his motion to suppress. Thereafter, the district court imposed a within-Guidelines sentence of 204 months. Ennis timely appealed.

II.

At the outset, the parties dispute whether *Carpenter v. United States*, 138 S. Ct. 2206 (2018), applies to the collection of real-time CSLI. In *Carpenter*, the Supreme Court held that the government's use of historical CSLI is a search within the meaning of the Fourth Amendment, triggering the general requirement for a warrant. *Id.* at 2223. Defendant argues that *Carpenter*'s holding applies with equal force to real-time CSLI, while the government argues that *Carpenter*'s

holding is limited to historical CSLI. We leave this question for another day, however, because answering it is not necessary for our disposition. Here, the government sought and obtained a search warrant for defendant's phone. Accordingly, even if *Carpenter* were to apply to real-time CSLI, the government complied with its edict: To "get a warrant." *Id.* Thus, we must only determine whether the warrant application established probable cause. We hold that it did.

The Supreme Court has long interpreted the Fourth Amendment to prohibit the issuance of a search warrant unless there is probable cause to believe that the place to be searched contains the thing to be seized. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 555–56 (1978). This requires a "nexus between the place to be searched and the evidence sought." *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005) (citation omitted). In the present case, the warrant affidavit established that the phone number belonged to Ennis and that he had two outstanding arrest warrants. These facts, taken together, are enough: Officers had probable cause to believe that what they sought to search (Ennis's CSLI) would lead them to whom they sought to seize (Ennis).

Our decision in *United States v. Sheckles*, 996 F.3d 330 (6th Cir. 2021), does not compel a different conclusion. In *Sheckles*, police sought to unravel a drug-trafficking conspiracy. *Id.* at 336–37. Officers sought a warrant to obtain the real-time CSLI for an individual known only as the "Louisville distributor" (who turned out to be defendant Dwayne Sheckles). *Id.* at 336. The affidavit for that search warrant contained details about the investigation to that point and identified the phone number that the distributor (Sheckles) had used to speak with a lower-level dealer. *Id.* at 338-39. Officers did not intend to seize anything but the location data: Once the officers obtained Sheckles's real-time location, they intended to (and did) use it to conduct further visual surveillance and to understand the structure of the drug operation. *Id.* at 336. Officers did not use the CSLI to conduct a physical search or carry out an arrest. *Id.*

In *Sheckles*, we articulated two standards that might apply to evaluate whether this search warrant established probable cause, *id.* at 338. First, the traditional "nexus" standard, which asks if a search warrant affidavit shows "a fair probability that the phone's data will aid in a particular investigation and disclose evidence of criminal activity?" *Id.* (citation and quotation marks omitted). Second, we questioned whether a higher standard, one that would require the affidavit to connect the phone itself to the criminal activity, was necessary. *Id.* However, in *Sheckles*, we declined to rule which standard applied, because the warrant was sufficient under either standard. *Id.*

In this case, Ennis asks us to apply the higher standard articulated in *Sheckles*. We decline to do so for two reasons. First, by leaving the question open, *Sheckles* declined to alter the probable cause standard: Thus, the traditional "nexus" standard remains good law. Second, *Sheckles* is factually distinguishable. The officers investigating Sheckles sought only to continue their investigation, not to carry out a seizure. But here, the officers sought to arrest Ennis. This is a much stronger "nexus"—the CSLI led directly to Ennis's arrest, not just continued investigation. Because the warrant application established probable cause, we affirm the district court's denial of Ennis's motion to suppress.

### III.

Ennis also challenges the district court's decision not to hold an evidentiary hearing or a *Franks*[2] hearing.

We review the district court's denial of a request for a search-warrant-related evidentiary hearing for an abuse of discretion. *United States v. Moore*, 999 F.3d 993, 999 (6th Cir. 2021). To justify an evidentiary hearing, Ennis was required to set forth "sufficiently definite, specific,

---

[2]*Franks v. Delaware*, 438 U.S. 154 (1978).

detailed, and non-conjectural reasons for why contested factual issues cast doubt on a search's validity." *Id.* (citation and quotation marks omitted). Ennis sought an evidentiary hearing in connection with his challenge to "the sufficiency of the probable cause presented in the warrant" affidavit. However, he failed to identify any specific factual issues that could undermine the search's validity.[3] Such a general challenge is insufficient. *Id.*

To justify a *Franks* hearing, Ennis was required to make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56. He sought a *Franks* hearing because there was "no way for him to know whether the information upon which the warrant was founded is false." But this is only conjecture, which is insufficient to meet the "substantial preliminary showing" required by *Franks*. *See, e.g.*, *United States v. Priosko*, 787 F.3d 358, 370 (6th Cir. 2015). The district court did not err when it denied Ennis's request for a hearing.

IV.

Finally, Ennis challenges the substantive reasonableness of his sentence. A sentence is substantively unreasonable when a district court "place[s] too much weight on some of the [18 U.S.C.] § 3553(a) factors and too little on others in sentencing the individual." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). It is "a claim that a sentence is too long (if a defendant appeals) or too short (if the government appeals)." *Id.* We exercise "a great deal of

---

[3]On appeal, Ennis argues for the first time that an evidentiary hearing would have allowed him to challenge the officer's motivation behind the warrant. We reject this argument for two reasons. First, Ennis has forfeited this argument by not raising it below. *United States v. White*, 874 F.3d 490, 495 (6th Cir. 2017). And second, an officer's motive for seeking a search warrant is irrelevant to the warrant's facial sufficiency. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) ("Review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit.").

deference" when reviewing a defendant's sentence for substantive reasonableness. *United States v. Mayberry*, 540 F.3d 506, 519 (6th Cir. 2008). Moreover, because Ennis's sentence is within the Guidelines, it is presumed to be reasonable. *United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc). Ennis has not rebutted this presumption. He argues that the district court refused to consider two arguments he made at sentencing, but the record belies his position.

First, Ennis's counsel argued that though his criminal history was correctly scored, it "seem[ed] almost absurd" to sentence him under criminal history category VI because three of his criminal history points came from "simple possession-of-marijuana offenses," and one point was for a driving offense. The district court noted that Michigan had since legalized marijuana possession, but Ennis was charged and convicted while marijuana was illegal which told the court "something about whether or not Mr. Ennis was willing to conform himself to the laws in effect at that time." Further, the district court noted, it was not the severity of Ennis's criminal history that was concerning, but its consistency. Ennis's criminal history reached back to the age of 17, which "suggest[ed] to [the court] that there's not a substantial overstatement of either recidivist likelihood or the seriousness in the criminal history category VI." The district court adequately considered this argument.

Second, Ennis lobbied the district court to stray from the Guidelines' recommendation that drug crimes involving higher quality methamphetamine receive more severe sentences. Ennis asked the district court to vary downward on policy grounds and sentence him without regard to the purity of his methamphetamine. The district court considered and rejected this argument, finding that the Guidelines' recommendation was "rational" because higher purity drugs can be "cut" to increase their volume and "distribute more drugs on the street." Ennis is not entitled to

more.  Although district courts may disagree with the Guidelines, they are not required to do so. *United States v. Kamper*, 748 F.3d 728, 742 (6th Cir. 2014).

In sum, the district court properly considered the relevant factors and crafted a sentence sufficient, but not greater than necessary, to comply with the purposes of § 3553(a).  It did not do so in the way Ennis requested, but that does not compel the conclusion that the district court disregarded his arguments.  *See United States v. Houston*, 813 F.3d 282, 296 (6th Cir. 2016).  Put differently, we will not deem Ennis's sentence unreasonable just because he thinks the district court should have given less weight to some factors.  *See United States v. Adkins*, 729 F.3d 559, 572 (6th Cir. 2013).

V.

For these reasons, we affirm the judgment of the district court.