NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0051n.06

Case No. 22-1233

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Jan 24, 2023 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE WESTERN |
| KEVIN BRIAN WARD, | ) | DISTRICT OF MICHIGAN |
|  | ) |  |
| Defendant-Appellant. | ) |  |
|  | ) | O P I N I O N |
|  | ) |  |

Before: STRANCH, MURPHY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Defendant Kevin Ward appeals the district court's denial of his motion to suppress. According to Ward, the search-warrant affidavit in this case failed to establish a nexus between the residence to be searched and his drug-dealing activities, and accordingly lacked probable cause. The district court found that the warrant established probable cause and also set forth facts sufficient to survive under the good faith exception in any event. For the reasons stated below, we **AFFIRM**.

I.

In or around the summer of 2020, the Kalamazoo Valley Enforcement Team ("KVET") of Kalamazoo, Michigan, received information that Ward had been selling crack cocaine, and heroin, and that he had been committing armed robberies over the course of several months. In response, KVET obtained a state-issued warrant which authorized the team to use a GPS tracker to surveille

a vehicle that Ward had been driving—a Chrysler 300 registered to his girlfriend. KVET tracked the Chrysler 300 for two weeks. Throughout this time, KVET successfully arranged two controlled buys between Ward and a confidential source ("CS"). The controlled buys generally involved Ward providing the CS with a meet-up location in response to the CS's call requesting to purchase drugs. KVET strip-searched the CS before each buy and surveilled the CS, including his travel to and from the meet-up location, as he bought the drugs from Ward. The team also observed Ward, including his drive in the Chrysler 300 to and from the meet-up location, as he participated in both controlled buys. For the first buy, Ward traveled from a residence located on Dutton Street in Kalamazoo, Michigan to the meet-up location and returned to the same address afterward. He also went to the Dutton Street residence after the second buy, but this time he traveled to the meet-up location from another residence, also in Kalamazoo, located on Sage Street. GPS surveillance further revealed that Ward frequented both residences, sometimes driving the Chrysler 300 directly from one to the other. He mostly visited the Dutton Street residence during the day and spent his nights at the Sage Street residence. Consistent with this travel pattern, Ward's girlfriend confirmed with law enforcement on October 20, 2020, that she and Ward were in a relationship and that he lived with her at the Sage Street residence.

KVET subsequently obtained warrants to search both residences, but only the Sage Street warrant is relevant here. In support of the warrant application for the Sage Street residence, KVET investigator Greg Day submitted an affidavit detailing the above facts to the magistrate judge. The affidavit, dated October 23, 2020, also stated that the first controlled buy took place within the last 10 days, and the second occurred within the last 48 hours. Officer Day averred that he had been in law enforcement for about four years and had participated in hundreds of drug investigations. Based on his training and experience, Officer Day explained that drug traffickers typically

maintain, "either on their person or at their residence or a secondary location," among other effects, large sums of money, drugs, drug paraphernalia, weapons, and records of drug sales and related purchases. The magistrate judge issued the warrant and the resulting search uncovered drugs, drug paraphernalia and money. Subsequently, a federal grand jury indicted Ward on charges including several counts of possession with intent to distribute controlled substances.[1]

Ward moved to suppress the evidence obtained during execution of the Sage Street search warrant. He principally argued that the supporting affidavit failed to establish a nexus between the Sage Street residence and criminal activity. The district court denied his motion. Ward later entered a plea agreement and pleaded guilty but preserved his right to appeal the court's suppression ruling. The district court issued Ward's sentence and this appeal followed.

II.

We analyze the district court's factual findings in its ruling on a motion to suppress for clear error "and its legal determinations—including whether probable cause existed—de novo." *United States v. Hines*, 885 F.3d 919, 924 (6th Cir. 2018). Moreover, "we give 'great deference' to the state judge's initial probable-cause conclusion when issuing the warrant, asking merely whether the judge had a 'substantial basis' for that conclusion." *United States v. Sheckles*, 996 F.3d 330, 337-38 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 717 (2021) (quoting first *Hines*, 885 F.3d at 924, then *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc)) (citations omitted).

---

[1] The operative indictment, which also named Ward's girlfriend as a co-defendant, was not limited to the aforementioned controlled buys or the evidence obtained in the Sage Street search warrant. It also included charges for criminal events that are not the subject of this appeal and thus warrant no further discussion here.

Here, the state judge found probable cause for KVET to search the Sage Street residence.  The record leads us to the same conclusion.

The Fourth Amendment protects the right to be free from unreasonable searches and seizures.  U.S. Const. amend. IV.  It provides that "no Warrants shall issue, but upon probable cause . . . and particularly describing the place to be searched, and the persons or things to be seized."  *Id.*  A finding of "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (quoting *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018)).  In this vein, "[t]ime and again the Supreme Court has emphasized that probable cause is not a high bar to clear."  *Id.* (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (internal quotation marks and alterations omitted)).  Still, probable cause will not lie where there is no nexus between the "place" to be searched and the "things" to be seized.  *United States v. Reed*, 993 F.3d 441, 447 (6th Cir.), *cert. denied*, 142 S. Ct. 289 (2021) (citing U.S. Const. amend. IV).  In other words, "[t]here must be a fair probability that the specific place that officers want to search will contain the specific things that they are looking for."  *Id.*

Notably, whether a search warrant affidavit establishes this nexus is a case-by-case determination and the answer is not always obvious.  *See id.* ("Courts have drawn fine lines between cases with 'little to distinguish' those that find probable cause from those that do not.") (quoting *United States v. Savoca*, 761 F.2d 292, 298 (6th Cir. 1985)).  In *Reed*, we ultimately decided the case based on the good faith exception, but we first discussed patterns in our earlier decisions illuminating the difficulty that may arise in probable cause determinations for cases involving drug dealing.  993 F.3d at 443-51.  A number of the cases presented close calls, where the affidavits connected the defendant to drug dealing but did not connect the drug dealing to the

defendant's home. *Compare United States v. Gunter*, 551 F.3d 472, 481 (6th Cir. 2009) ("Because the quantity of drugs and the repeated nature of the transactions make it reasonable to conclude that Gunter was engaged in ongoing drug trafficking, it was reasonable to infer that evidence of illegal activity would be found at Gunter's residence"), *with United States v. Brown*, 828 F.3d 375, 384 (6th Cir. 2016) (summarizing our precedent as teaching "that if the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity . . . it cannot be inferred that drugs will be found in the defendant's home—even if the defendant is a known drug dealer"). The *Reed* case itself also presented a fine line. *See* 993 F.3d at 449–50 ("When judged under these probable-cause standards, the facts of this case sit on the hazy constitutional border between a sufficient nexus and an insufficient hunch."). That case involved a search warrant for a residence where the affidavit established that the defendant likely resided, where the defendant parked a car that he used to deal drugs, and from where the defendant traveled to another location that was connected to drug dealing. *Id.* at 445, 451. But the government did not contest the absence of probable cause in that case, focusing its arguments on the good faith exception instead. *Id.* at 446, 450-51. We accordingly relied on that principle in deciding the case and declined to place the affidavit on either side of the fine line of probable cause presented by those facts. *Id.* at 451.

Critically, however, the issue is not as murky where there is a clear connection between the drug dealing and the residence. For instance, we have found a sufficient nexus where the affidavit established that the defendant traveled directly from the residence to be searched to the site of the drug sale. *See United States v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008).[2] And

---

[2] This opinion cites two Sixth Circuit cases with the same title, *United States v. Gunter*, but, as evident from the citations, these cases are not the same.

we reached the same conclusion in a case where "the affidavit in support of the residential search warrant established that [the defendant] was an active drug trafficker, that the . . . address [to be searched] was [the defendant's] home, and that both of [the defendant's] vehicles were regularly parked there." *United States v. Coleman*, 923 F.3d 450, 457 (6th Cir. 2019). The affidavit in *Coleman* further provided that "agents had conducted three controlled buys of cocaine from [the defendant] and observed him drive directly from his condo to the site of the most recent buy, less than two weeks before the warrant issued." *Id.*; *see also United States v. Miller*, 850 F. App'x 370, 373 (6th Cir. 2021) (citing additional cases). Similarly, in *United States v. Bulgatz*, a sister circuit found a sufficient nexus where the affidavit established that the defendant started from her residence before delivering drugs to the subject location. *See* 693 F.2d 728, 731 (8th Cir. 1982) ("[T]he fact that [the defendant] started from her residence shortly before allegedly delivering drugs . . . suggests that drugs were kept at the [defendant's] house.").

By contrast, this court has declined to find a sufficient nexus where "the search warrant affidavit contained no evidence that [the defendant] distributed narcotics from his home, that he used it to store narcotics, or that any suspicious activity had taken place there." *Brown*, 828 F.3d at 382. The affidavit in *Brown* "did not suggest that a reliable confidential informant had purchased drugs there, that the police had ever conducted surveillance at [the defendant's] home, or that the recorded telephone conversations linked drug trafficking to [the defendant's] residence." *Id.* Even though the defendant's car in *Brown*, which was registered to his home, was parked outside a residence where drugs were also present and the car tested positively for narcotics during a canine search, we found this insufficient to establish a nexus. *Id.* at 382-83. We explained that "[a] more direct connection was required, such as surveillance indicating that [the defendant]

had used the car to transport [drugs] from his home to [an alleged drug trafficker's home] on the day in question." *Id.* at 383.

Ward's case is not like *Brown* where the "more direct connection" was absent. *Id.* Rather, the very fact we deemed necessary to support a finding of probable cause in *Brown* is present here. That is, the affidavit detailed surveillance indicating that Ward had used the Chrysler 300—the car that he parked nearly every night at the Sage Street residence and every day at the Dutton Street residence—to transport drugs to the second controlled buy. Not to mention, just like the defendant in *Coleman*, Ward also traveled from the Sage Street residence to the most recent controlled buy. In *Coleman*, the "agents had conducted three controlled buys . . . from [the defendant] and observed him drive directly from his condo to the site of the most recent buy, less than two weeks before the warrant issued," and we found these facts "sufficient to establish that [he] was an active drug trafficker at the time the warrant issued and to provide a reasonable inference that he transported narcotics from his residence to the location of the [drug] sale." 923 F.3d at 457; *see also United States v. Sumlin*, 956 F.3d 879, 887 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 605 (2020) (finding sufficient nexus where affidavit verified allegations of drug trafficking, provided probable cause to believe the defendant lived at the residence to be searched, was home when he received a text requesting drugs and left from his home to deliver the drugs). The affidavit in Ward's case supports the same conclusion.

Our case law makes clear that Ward's travel to the second controlled buy from the Sage Street residence, combined with the remaining facts established in the affidavit is enough. *See Gunter*, 266 F. App'x at 419 ("[T]his Court's precedents establish that a nexus exists between a known drug dealer's criminal activity and the dealer's residence when some reliable evidence exists connecting the criminal activity with the residence."). To be sure, the affidavit in this case

set forth sufficient facts for the state judge to find probable cause that Ward lived with his girlfriend at the Sage Street residence. It stated that he slept there almost every night, and that his girlfriend confirmed that he lived there with her. The affidavit also established that Ward used the same car that he used in the controlled buys to travel back and forth between the Dutton Street residence and the Sage Street residence. Moreover, the controlled buys established that Ward was dealing drugs, and Officer Day affirmed, based on his four years of experience with law enforcement and participation in hundreds of drug investigations, that drug traffickers typically maintained drug paraphernalia in their homes. Affording the great deference owed to state-judge probable-cause determinations, the facts in the affidavit provided a substantial basis for the belief that drugs, or evidence of drug dealing would likely be found at the Sage Street residence.

Ward advances several arguments to resist this conclusion, none of which we find persuasive. He first suggests that the factual scenario presented in his case raises issues of "unsettled jurisprudence." He mostly relies on *United States v. Bell*, No. 20-1884, 2022 WL 59619 (6th Cir. Jan. 6, 2022), *cert. denied*, 142 S. Ct. 2762 (2022), *United States v. Mitchell*, No. 21-5571, 2021 WL 5772534 (6th Cir. Dec. 6, 2021), *United States v. Moore*, 999 F.3d 993 (6th Cir. 2021), and *Reed*, 993 F.3d 441. But two of those cases, *Bell* and *Mitchell*, assess the weight of a confidential informant's word, an issue not present here. Though KVET used a CS to complete the controlled buys, the team monitored the buys and surveilled both the CS's and Ward's participation. Officer Day's affidavit details what he and his team gathered through their surveillance, not what the CS told the team. Furthermore, regarding our decision in *Moore*, Ward correctly points out that we found probable cause where the affidavit detailed a controlled buy conducted by the defendant in the home that was ultimately searched. 999 F.3d at 997. While neither of the controlled buys in this case were conducted at the Sage Street residence, this does

not negate our conclusion, as our opinion in *Moore* does not speak to the question currently before the court: whether Ward's drive from the Sage Street residence directly to the second controlled buy, in combination with the material in the affidavit, established a nexus.

Likewise, Ward's reliance on our discussion in *Reed* is also misplaced. In *Reed* the court recognized cases in which a finding of probable cause hinged on the defendant's status as a drug dealer alone can present close calls, but the affidavit in this case relied on more. The affidavit also pointed out that Ward drove the Chrysler 300 back and forth between the Dutton Street and Sage Street residences on multiple occasions; that he drove it to and from both controlled buys; that he regularly parked it at the Sage Street residence; and that he drove it directly from the Sage Street residence to the meet-up location where he sold narcotics to the CS during the second controlled buy. Thus, this is not a case where the affidavit relied solely on Ward's status as a drug trafficker.

Ward also argues that the "implicitly small amounts" of crack cocaine involved in this case could not demonstrate that his drug dealing was continual and ongoing as to support a finding of probable cause. But by his own admission, *Reed* "did not mark quantity as a critical factor in the analysis." Nor do we; it was not the quantity of drugs that established probable cause here, it was the fact that Ward drove from the Sage Street residence directly to the controlled buy. *See Brown*, 828 F.3d at 383 n.2 (noting that we have found sufficient nexus where the affidavit failed to show that the residence had been used in drug dealing, but only in "distinct" cases where "the affidavits did not just establish that the defendants were drug dealers, but contained overwhelming evidence that the defendants were major players in a large, ongoing drug trafficking operation"). Because, in addition to the evidence discussed above, there was a nexus here between the second controlled buy and the Sage Street residence, the affidavit was adequate without averments that Ward possessed a large quantity of drugs or that he was a major player.

Finally, Ward invites the court to find that the affidavit supported probable cause to search the Dutton Street residence rather than the Sage Street residence. According to Ward, the facts suggested only that he slept at the Sage Street residence and that the Dutton Street residence was likely the "stash house." Yet, he offers no support for the proposition that the facts in the affidavit could not establish a finding of probable cause to support search warrants for *both* residences— i.e., a finding of probable cause to search one does not negate a finding of probable cause to search the other. More importantly, the fact that Ward made no stops along the way, but rather went directly from one location to the other, suggests that the drugs, which easily could have been secreted on his person, were retrieved from the Sage Street residence and taken to the Dutton Street residence. Accordingly, each of Ward's arguments fail.

III.

Even if a more probable inference would have been that Ward was leaving the Sage Street residence because he slept there, not because he kept drugs at that residence, the good faith exception would lead us to the same conclusion. The good faith exception allows for courts to uphold a search warrant lacking probable cause so long as the officer executing the warrant acted "in objectively reasonable reliance on a subsequently invalidated search warrant." *See United States v. Leon*, 468 U.S. 897, 922 (1984). There are several instances where the court will decline to apply the good faith exception. *Id.* at 923. Relevant here, Ward argues that the good faith exception should not apply because the affidavit is "bare-bones"—i.e., "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (quoting *Brown v. Illinois*, 422 U.S. 590, 611 (1975) (Powell, J., concurring in part)); *see also United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017). An affidavit is not bare bones where the nexus between drug activity and the inside of the residence is at least "minimally sufficient." *Reed*, 993

- 10 -

F.3d at 450. This means that a search warrant lacking in probable cause will be upheld so long as the affidavit includes facts that draw a "plausible connection" between the criminal activity at issue and the residence to be searched. *Brown*, 828 F.3d at 385-86. Our decision in *Reed* is instructive here. Like the affidavit in that case, the affidavit here established that Ward resided at the Sage Street residence, he parked the Chrysler 300 there which he had used for both of the controlled buys, and he drove the Chrysler 300 back and forth between the Sage Street residence and the Dutton Street residence, which Ward does not dispute the officers had probable cause to search. But the affidavit in this case goes a step further, as Ward traveled to the second controlled buy directly from the Sage Street residence. Thus, even had the nexus not risen to the level of probable cause, there is a "minimally sufficient," plausible connection between the drug activity and the Sage Street residence. *Id.* Accordingly, we find that the search warrant established probable cause, and had it not, the good faith exception is applicable regardless.

IV.

For the reasons stated above, we **AFFIRM**.