NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0422n.06

No. 23-3857

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Oct 24, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| NICHOLAS DELVON GEER, | ) | |
| Defendant-Appellant. | ) ) | OPINION |
| | ) | |

Before: MOORE, COLE, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. A jury convicted Nicholas Geer on multiple drug and gun charges. The district court sentenced him to 180 months in prison. Geer now challenges his convictions, arguing that the district court erred in denying his motion to suppress and by admitting certain evidence at trial. Seeing no error, we AFFIRM.

I.

In September 2021, a confidential informant (CI) told police that he had been buying heroin from two men, "Chris" and "Mike," for about a year. The CI described "Chris" as a young black man with gold dreadlocks who drove a BMW and lived near Coventry Road in Cleveland Heights, Ohio. The CI gave police the phone numbers of both men. Detective Brett Buchs identified "Chris" as Nicholas Geer, having previously received information of Geer's drug trafficking that summer, including that Geer was known to drive a BMW. Buchs compared a Facebook photo of Geer to his driver's license photo, and the CI confirmed that "Chris" was Geer after seeing that photo. In December 2021, another CI told police that he had purchased heroin from "Chris" at his

home in Cleveland Heights (the "Cleveland Heights Residence") and provided police with the address. The second CI also identified "Chris" as Geer after seeing his photo.

On December 7, police saw "Mike," identified as co-defendant Samuel Scott, arrive at the Cleveland Heights residence. Police observed Scott and Geer enter and exit the Cleveland Heights residence several times. The two ultimately departed in Scott's car. A few days later, police had the first CI conduct a controlled buy from Geer. Police swept the CI's person and car to ensure that the CI was not carrying drugs. While surveilling the house prior to the buy, police saw Geer exit the Cleveland Heights residence and enter the passenger side of a Jeep that had just pulled into the driveway. After a few minutes, Geer exited the car and reentered the residence. Based on their training and experience, police thought this was consistent with drug trafficking. A few minutes later, Geer sold the CI drugs from the back door of the residence.

About a month later, police conducted another controlled buy from Geer. Again, police searched the CI's person and car for drugs prior to the buy and found nothing. This time, Geer met the same CI at a location away from the residence, and Geer arrived in a white truck with an attached yellow snowplow. The police had seen the truck at Geer's residence during the first controlled buy, and the CI told police that Geer had used the truck to conduct drug sales in the past. Geer's half-brother, Jamal Gill, owned the truck. Another of Geer's half-brothers, Jeffvon Gill, leased the first floor unit at the Cleveland Heights residence. Then, on January 27, 2022, Geer and an undercover officer spoke and exchanged text messages in which Geer indicated that he had heroin and crack cocaine for sale. Shortly after these communications ended, police saw Geer exit the Cleveland Heights residence.

Based on an affidavit reciting the above facts, police obtained and executed a search warrant for the first floor of the Cleveland Heights residence. Police found several bags of

controlled substances, a loaded firearm, currency, and drug trafficking paraphernalia. They also found and arrested Geer in the basement of the home, which is where Geer claims he resided (rather than on the first floor). A grand jury indicted Geer on seven counts of possession with intent to distribute various controlled substances and two firearm counts.

Geer moved to suppress the evidence obtained through the search warrant. The district court denied the motion. Geer proceeded to trial, where a jury convicted him on all counts. The district court sentenced Geer to 180 months' imprisonment. Geer now appeals.

II.

Geer first challenges the district court's denial of his motion to suppress. When considering the district court's decision on a motion to suppress, we review the court's factual findings for clear error and its legal conclusions de novo. *United States v. McMullen*, 103 F.4th 1225, 1229 (6th Cir. 2024).

Probable cause exists for a search warrant when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). This is not a "high bar to clear." *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (en banc) (citation omitted). The magistrate judge's probable cause decision "should be paid great deference, and we overturn that decision only if the magistrate arbitrarily exercised his or her authority." *Id.* at 311–12 (citations omitted).

The search warrant affidavit here easily passes the probable cause bar. The affidavit first recounts the various information provided by the two CI's, based on their history of drug purchases from "Chris," whom they later identified as Geer. One said Chris lived near Coventry Road. The affidavit explains that the Cleveland Heights residence is "near Coventry Road." The other CI had visited Geer's Cleveland Heights residence. The affidavit describes surveillance detailing Geer

going to and from the residence. It also describes a controlled buy and another suspected drug transaction at the Cleveland Heights residence on December 13, 2021. On that date, police first watched Geer exit the residence, get into the front passenger seat of a Jeep that had just pulled into the driveway, exit the Jeep a few minutes later, and reenter the residence. Then Geer conducted the drug transaction with the first CI from the backdoor of the residence. The affidavit then details another controlled buy with Geer on January 13, 2022, away from the Cleveland Heights residence. Police noticed that Geer arrived in a white truck with a yellow plow, which they had previously seen parked at the Cleveland Heights residence.

The affidavit also detailed the investigation of the Cleveland Heights residence. The affidavit explained that investigators had determined that one of Geer's half-brothers, Jeffvon Gill, had rented the first floor of the residence. Based on information obtained during prior investigations into Gill's drug trafficking, "investigators believe[d] that Gill put his name on the lease for [the Cleveland Heights residence] in an effort to thwart any law enforcement investigation into [Geer's] drug trafficking activity." Finally, the affidavit recounts an attempted buy, in which an undercover officer spoke and texted with Geer on the phone about a future buy and Geer admitted to having crack cocaine and heroin for sale; shortly thereafter, police watched Geer exit the Cleveland Heights residence.

The affidavit has all the information necessary to establish probable cause. Two CIs identified Geer and the location of (or approximate location of) his residence. Subsequent controlled buys by one of the CIs corroborated the CIs' allegations that Geer was trafficking drugs. *See United States v. Moore*, 999 F.3d 993, 997 (6th Cir. 2021) ("[A]n affidavit that both details an informant's tip and describes a controlled drug purchase with the informant provides 'sufficient corroborating information' to uphold a finding of probable cause."). Those controlled buys linked

Geer to the Cleveland Heights residence; in one he conducted the drug transaction out of the back door. *See id.* ("[E]ven a single controlled purchase can be sufficient to establish probable cause to believe that evidence of drug trafficking is present at the purchase location."). And surveillance showed Geer coming to and from the residence and driving vehicles which had been seen parked at the residence. *See Christian*, 925 F.3d at 310 (noting the importance of surveillance tying the defendant to the residence). Considering the totality of the circumstances as we must when reviewing an affidavit, *see id.* at 309, the district court didn't err by concluding that "a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found" at the Cleveland Heights residence, *Mays v. City of Dayton*, 134 F.3d 809, 814 (6th Cir. 1998) (citation omitted).

Geer's arguments do not convince us otherwise. Geer first points to the panel opinion in *United States v. Sanders*, 59 F.4th 232 (6th Cir. 2023), and says that the court there found no probable cause under facts like these. But after he filed his brief, this court sitting en banc vacated the panel opinion in *Sanders* and held that the warrant passed the probable cause bar. *United States v. Sanders*, 106 F.4th 455, 464 (6th Cir. 2024) (en banc). The en banc opinion in *Sanders* controls, and it does not help Geer.

Geer also argues that there was no nexus between the drug evidence sought and the Cleveland Heights residence. But the affidavit describes Geer conducting a drug transaction *out of the back door of the residence*. *See Moore*, 999 F.3d at 997. We have found probable cause based on much less—for example, when officers watch the defendant leave a residence, conduct a controlled buy, and then return to the home. *See, e.g.*, *United States v. Jones*, 817 F.3d 489, 491 (6th Cir. 2016). In any event, there is more evidence of a nexus—one CI could describe generally where Geer lived, and the other knew where he lived precisely. Police watched Geer come to and

from the residence. And they spoke with him on the phone about a future buy just minutes before watching him exit the Cleveland Heights residence. Similar facts were enough to establish a "probable cause nexus" in *Sanders*. *See* 106 F.4th at 461. So too here.

Geer also seems to question the "timeliness" of the information contained in the affidavit. But he doesn't elaborate on that argument, so it is forfeited. *See United States v. Sandridge*, 385 F.3d 1032, 1035 (6th Cir. 2004) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [forfeited].").

Probable cause supported the search warrant, so the district court didn't err by denying Geer's motion to suppress.

### III.

Geer next says that district court erred by admitting the evidence of the controlled buys with the CI. He says that Federal Rule of Evidence 404(b) barred this evidence.

Rule 404(b) bars the admission of a defendant's prior bad acts to prove his propensity to commit future ones, but allows it for other purposes, for example, to prove motive or intent. Fed. R. Evid. 404(b)(1) & (2). But the district court here admitted the evidence of Geer's prior drug transactions as background evidence, not to prove propensity or even under one of 404(b)'s exceptions. *See* R. 87, Voir Dire Transcript, PageID 580 ("[M]y view is that there is really not 404(b) evidence, but I think it is proper background that the Government can present."); R. 89, Trial Transcript III, PageID 792 (overruling defense counsel's objection to the evidence "for the reasons discussed previously."). Background evidence, sometimes called *res gestae*, "does not implicate Rule 404(b)." *United States v. Martinez*, 430 F.3d 317, 335 (6th Cir. 2005). Admissible background "evidence has a causal, temporal or spatial connection with the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). It "is a prelude to the charged offense,

is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.* Geer's appeal does not challenge the district court's ruling that the evidence was admissible as background evidence. He instead argues that the court shouldn't have admitted the evidence under Rule 404(b), a ruling the district court did not make. So Geer has failed to mount any valid challenge to the admission of the evidence. *See Castellon-Vogel v. Int'l Paper Co.*, 829 F. App'x 100, 102 (6th Cir. 2020) (stating that an appellant abandons an issue for appeal where he fails to confront the district court's reasoning and "explain why the court was wrong").

\* \* \*

We AFFIRM.