NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0562n.06

No. 24-5750

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 05, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| MYRON JEFFERSON, | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

---

Before: SUTTON, Chief Judge; MURPHY and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Officers obtained and executed a search warrant to search Jefferson's house for evidence of drug trafficking. The search produced illegally possessed firearms and drugs. Jefferson moved to suppress this evidence, but the district court denied his motion. He now appeals that ruling. Because the search warrant was supported by probable cause, we affirm.

**BACKGROUND**

Myron Jefferson comes to us challenging the district court's denial of his motion to suppress evidence seized from a residence on Keats Road in Memphis, Tennessee. In evaluating whether probable cause supports the warrant to search that residence, "we look only to the four corners of the affidavit." *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010). So we begin by describing the affidavit at issue here.

I.       **The Warrant Affidavit**

Special agents with the Tennessee Bureau of Investigation began investigating Jefferson after receiving a tip from a confidential informant (CS-1) that Jefferson was known locally to sell fentanyl at felony quantities. Over the following three months, officers directed CS-1 to make three phone calls to Jefferson requesting to buy 0.5 grams or more of fentanyl (a felony quantity). Jefferson agreed to sell fentanyl to CS-1, and CS-1, acting at the officers' direction, performed three controlled buys from Jefferson. The police observed the buys, field tested the substance CS-1 purchased from Jefferson, and confirmed it was fentanyl. Before the third buy, officers watched Jefferson drive straight from the Keats Road home to the designated purchase location.

Aside from the three controlled buys, the affidavit contains other material connecting Jefferson to the Keats Road home. From generally conducting surveillance at the residence, investigators believed that Jefferson exercised the type of dominion and control over the Keats Road home that demonstrated it was one of his primary residences. The investigators also repeatedly observed Jefferson leave that home and drive to a parking lot where another person would enter his car and soon thereafter exit holding a plastic bag or another item they did not have before entering. The officers believed that these were other drug deals. Finally, the affiant, Special Agent Morgan Canfield, testified to his experience and expertise and noted that drug dealers often use their primary residence to house their drug supply, proceeds from drug sales, or other contraband. While neither the Keats Road home nor the cars Jefferson drove were registered in his name, Agent Canfield also testified that drug dealers frequently use vehicles and residences registered to other people.

## II.    Procedural History

Based on this affidavit, a Tennessee judge issued a warrant to search the Keats Road home. Upon executing the warrant, investigators found, among other things, fentanyl, methamphetamine, and firearms. They arrested Jefferson and later indicted him on a series of drug and firearm charges. Jefferson moved to suppress evidence seized from the Keats Road home. As relevant here, he argued that the search warrant affidavit did not provide a sufficient connection between the home and his alleged criminal activity. The district court denied his motion to suppress in an oral ruling, explaining that the warrant was supported by probable cause and that even if it were not, the evidence could still be admitted under the good faith exception.

Jefferson pled guilty to conspiracy to possess with intent to distribute 400 grams or more of fentanyl and three counts of unlawfully possessing a firearm as a felon. *See* 21 U.S.C. §§ 841(a)(1), 846; 18 U.S.C. § 922(g)(1). As part of this plea agreement, Jefferson preserved his right to appeal the denial of his motion to suppress. Exercising that right, he brought this timely appeal.[1]

## ANALYSIS

When reviewing a district court's denial of a motion to suppress, we review factual findings for clear error and legal conclusions, including probable cause determinations, de novo. *United States v. Sheckles*, 996 F.3d 330, 337 (6th Cir. 2021); *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).

---

[1] The officers also searched the home of Jefferson's mother, where they seized more drugs and firearms. To the extent Jefferson asserts on appeal that this evidence should have been suppressed as well, he offers only a cursory and conclusory argument. And Jefferson did not seek to suppress this evidence in his initial motion to suppress. Therefore, we do not address the search of his mother's home. *See United States v. Critton*, 43 F.3d 1089, 1093 (6th Cir. 1995).

The Fourth Amendment protects against "unreasonable searches and seizures" and requires warrants to be based "upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. When evaluating whether a specific search was supported by probable cause, we look to the "totality of the circumstances" described in the warrant affidavit. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003); *see United States v. Sanders*, 106 F.4th 455, 463 (6th Cir. 2024) (en banc) Specifically, we ask whether the totality of the circumstances demonstrates a "fair probability" that evidence of a crime will be found at the location of the search. *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021). We call this the "nexus" requirement. *Id.* at 998. The affidavit in support of the warrant must show a "nexus" between the evidence and location that is "specific and concrete, not 'vague' or 'generalized.'" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (quoting *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (en banc)). Even if a warrant was not supported by probable cause, however, the fruits of the resulting search will not be suppressed if an officer could have relied in good faith on the warrant. *United States v. Leon*, 468 U.S. 897, 920–22 (1984).

The facts in the affidavit here demonstrated a "fair probability" that Jefferson dealt drugs and that evidence of that criminal behavior would be found at the Keats Road home. *Moore*, 999 F.3d at 996. Agent Canfield attested that CS-1 informed the police that Jefferson sold fentanyl in the area, and in felony quantities. The police then made three controlled buys from Jefferson with CS-1 as a proxy and verified that the substance received from Jefferson was fentanyl. In one of these buys, Jefferson came straight from the Keats Road home, which investigators believed was a primary residence of his. And police also observed Jefferson repeatedly drive straight from the Keats Road home to parking lots where individuals would enter his car and quickly exit holding something they did not have before they entered his car. Finally, Agent Canfield explained that

based on his experience and expertise, drug dealers often keep contraband and proceeds from drug deals at their homes. *See United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) (noting that judges may "infer that drug traffickers use their homes to store drugs and otherwise further their drug trafficking").

Looking to the totality of the circumstances, it was reasonable for the judge to issue a search warrant. Officers' surveillance of Jefferson revealed that he likely lived at the Keats Road residence and repeatedly traveled directly from the Keats Road home to suspected drug deals. And their controlled buys, including one in which they observed Jefferson travel straight from Keats Road to the buy, corroborated CS-1's tip. Thus, we agree with the district court that the affidavit demonstrated a sufficient likelihood that officers would find drugs and other evidence of drug dealing at the Keats Road residence.

Jefferson's arguments to the contrary are unpersuasive. He first argues that the confidential informant's tip was unreliable because the informant was anonymous, had a criminal history, and may have received a benefit from the police for his cooperation. Yet, as the district court noted, CS-1's initial tip (including the identity of the drug dealer, the type of drugs, and the quantity) was "corroborated with surveillance." Oral Ruling on Mot. to Suppress Hr'g Tr., R. 259, PageID 630. And when officers can "verify key information received from the informant," it is reasonable for the judge to treat the informant's tip as reliable. *United States v. Burrell*, 114 F.4th 537, 551 (6th Cir. 2024) (quoting *United States v. Crawford*, 943 F.3d 297, 307 (6th Cir. 2019)). What's more, given the extensive surveillance corroborating CS-1's tip, the initial tip did not contribute much value to the probable cause formula; instead, the subsequent three controlled buys and further police investigation supplied the thrust of the indicia of criminal activity at the Keats Road location. *See United States v. McCoy*, 905 F.3d 409, 419 (6th Cir. 2018).

Next, Jefferson contends that the warrant was tainted because the judge who issued it was not neutral or detached. Jefferson says the judge was biased because he was a member of the same church as Agent Canfield and allegedly issued the warrant on a Sunday during or after church. But the district court specifically found that, "[t]here's nothing in this record to suggest that either the agent or the judge did anything inappropriate." Oral Ruling on Mot. to Suppress Hr'g Tr., R. 259, PageID 611. Agent Canfield testified that he "never really engaged with" the judge personally aside from happening to attend the same church. Mot. to Suppress Hr'g Tr., R. 593, PageID 2809. Far from forum shopping, Agent Canfield explained that he has sought warrants or administrative rulings from at least three other judges aside from the judge who issued the warrant in this case. Jefferson's conclusory allegations that the judge was biased are unsubstantiated, and they do not compel us to disturb the district court's finding that neither the judge nor Agent Canfield acted inappropriately with respect to this warrant.

## CONCLUSION

We affirm the district court's denial of Jefferson's motion to suppress.